### No. 10,651.

COMMONWEALTH CASUALTY INSURANCE CO. *v.* KUHRT.

Decided April 7, 1924.

Action on accident insurance policy.    Judgment for plaintiff.

*Reversed.*

1. APPEAL AND ERROR—*Directed Verdict.* Where both parties to an action move for a directed verdict, the judgment of the court on the motion has the effect of a general verdict.

2. PRINCIPAL AND AGENT—*Agency.* Agency cannot be established by the declarations of the supposed agent, and acts ·which will amount to a holding out of a person as an agent, must be the acts of the principal.

3. INSURANCE—*Agency.* Under the provisions of the Colorado Insurance Code of 1913, an attempt to bind an insurance company for the acts of an alleged agent must fail, where there is no evidence that the agent was licensed to act.

4.       *Oral Statements of Agent.* Under the provisions of paragraph 9 of section 2491, C. L. '21, an insurance company is exempt from obligations arising from any oral statements made by a person in taking an application for insurance, which are not also contained in the application itself.

5.       *Estoppel.* No inference of recognition of an insurance policy by the company can be based on its retention of the premium, where it appears from the evidence that as soon as it was informed of the claim of the beneficiary it rejected it on the ground that the policy had not been issued until after the death of the applicant.

6.       *Authority of Agent.* In an action on an insurance policy, evidence reviewed and held insufficient to support a finding that an alleged agent had authority to make a contract of insurance.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. L. WARD BANNISTER, Mr. SAMUEL M. JANUARY, for plaintiff in error.

Messrs. CRUMP & RILEY, for defendant in error.

*Department Two.*

MR. CHIEF JUSTICE TELLER delivered the opinion of the court.

ACTION by defendant in error to recover upon an accident insurance policy for $5,000 alleged to be due under said policy on the death of the insured.

The complaint contained a cause of action on the policy,

and another on an oral contract of insurance. Both sides moved for a directed verdict. The court sustained the motion of the plaintiff, and held that an oral contract had been established by the evidence, and directed a verdict for plaintiff in the sum of $5,000. Such finding has the effect of a general verdict (*Saxton v. Perry*, 47 Colo. 263, 107 Pac. 281), and the only question to be determined is whether or not there was substantial evidence to support the finding.

The evidence of a contract of insurance consists of the testimony of the beneficiary, a daughter of the deceased, and her husband. It was to the effect that one Evans and another person, unidentified by the evidence, on October 28, 1921, called upon the deceased and the son-in-law, Kuhrt, and urged them to take out accident insurance; that Evans and his companion had with them blank applications for insurance, and sample policies; that the deceased read the sample policies, and an application for insurance, signed the application, paid a premium of $15, and received a receipt therefor. The insured died from an accident, November 4, 1921, before any policy had been executed by the company.

That oral contracts of insurance are enforceable, is not disputed, but it is claimed, in behalf of the plaintiff in error, that there is no evidence to sustain a finding that Evans was empowered to do more than solicit applications, collect premiums and transmit the applications to the company. The only evidence of his connection with the company is that a policy was issued upon the application, before knowledge of the death had come to the company, which bore the name of Evans as a countersigning agent.

He was not produced as a witness, though it appears that a subpoena for him, issued at request of the company, had been in the hands of an officer for some time before the trial. He was not, at the time of the trial, nor had he been after the date of the application, in the company's employ. Plaintiff's evidence was that the deceased and his son-in-law were told that the application would be

sent to the company; and that the policy, when issued, would be mailed to the applicant. The application, which was in evidence, signed by the deceased, bore date October 28, 1921, and contained the following statement, "Policy in force for one year from date of issue."

There was testimony that Evans said that the policy would date from the day of the application; that if the insured suffered a fatal injury, the beneficiary would receive $5,000, and that if he died a natural death, the beneficiary would receive $200.

In the face of this evidence of a signed application for a policy, the knowledge brought home to the applicant that the policy he was seeking would be mailed to him, and that it would be in force from the date of its issue, we are at a loss to understand how it can be found that the negotiations resulted in an oral contract of insurance. However, taking the finding of the court as it stands, the vital question is, was there evidence to sustain a finding that Evans was authorized to bind the company by a present contract of insurance. As above stated, there is no evidence that the company had ever conferred such authority upon him, or that he had any authority to represent the company except as it may be inferred from his statements and acts, nor is there any evidence that the insured had any possible knowledge of acts of the company by which it would appear that the company had held Evans out as having such authority.

It should be observed here that a policy was issued and mailed to the deceased after his death. The finding of the trial court was that Evans had power to make a contract of insurance and "that the company is estopped to deny that the signature of Evans appearing on the contract of insurance was not his signature in fact." Upon what ground this estoppel rests does not appear. There is no evidence that the plaintiff had changed her position for the worse because of any act of the company upon which an estoppel could be based. The company did nothing but issue a policy such as the application called for.

Moreover, since the relief granted was based upon an oral contract, it was immaterial who signed the policy. The record discloses no ground for the further statement of the court that the company was estopped to deny that Evans was such an authorized agent within the state of Colorado, as is meant by that term in the Colorado insurance laws.

It is elementary that an agency cannot be established by the declarations of the supposed agent, and that acts which will amount to a holding out of a person as an agent, must be the acts of the principal.

Defendant in error maintains that under our insurance Code (Laws of 1913), Evans must be regarded as an agent of the company with full authority to bind it by an oral contract. The attempt to hold the company for the acts of Evans on the ground that it is bound, by our statute, for the acts of its licensed agents must fail, because there is no evidence that Evans was a licensed agent.

Paragraph 9 of section 21 of the act (section 2491, C. L. 1921), provides that any person who shall solicit and procure an application for insurance shall "in any controversy between the parties to the contract, or between the parties to the contract and the beneficiary, * * * be held to be the company's agent, whatever conditions or stipulations may be contained in the policy or contract." It then provides: "But no statement or declaration made to or by an agent, examiner or other person, not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."

This provision of the law clearly exempts the company from obligations arising from any oral statements, made by Evans when taking the application, which were not also in the application itself.

*U. S. Accident Assn. v. Kittenring,* 22 Colo. 257, is conclusive against the judgment. In that case there was an application containing a stipulation that the policy should

take effect only from the time of its acceptance. The admission of testimony of statements, made by the solicitor at the time of the application, to the effect that the policy would be in force from the date of the application, was held error.

It is further contended by defendant in error that the retention by the defendant company of the premium paid for several months is a recognition of the policy. No such inference can properly be drawn from the fact mentioned, because the evidence clearly shows that the company, as soon as informed of the claim, rejected it on the ground that the policy had not been issued until after the death of the applicant.

It appears, then, that there is no sufficient evidence to support the finding that Evans had authority to make a contract of insurance. To establish the rule that insurance companies can be bound under the circumstances here shown would be to put them at the mercy not only of their authorized agents, but of persons who volunteer to act as such. There was no oral contract of insurance; and the policy, having been issued after the death of the applicant, and before the company had knowledge of his death, is, of course, invalid. For these reasons the judgment is reversed.

MR. JUSTICE DENISON and MR. JUSTICE WHITFORD concur.