No. 14,548

WARNER *v.* FARMERS' AUTOMOBILE INTER-INSURANCE EXCHANGE.

(90 P. [2d] 965)

Decided May 15, 1939.

Mr. WALDO RIFFENBURGH, for plaintiff in error.

Messrs. WOLVINGTON & WORMWOOD, Messrs. STONE & HILL, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, plaintiff below, sued defendant in error, hereinafter mentioned as the company, to recover $2,564.46, the amount of a judgment she previously had obtained against one Carl Heinrich, for damages sustained by her July 14, 1937, resulting from a collision of a car owned and driven by Heinrich with her automobile in which she was riding. The company admitted having written a policy insuring Heinrich against such damages, but defended on the ground that the policy had been cancelled July 4, 1937, and was not in force at the time of the accident. A replication alleged waiver of premium payment, and denied that the policy had been cancelled. At the close of the evidence, the court, on motion, directed a verdict for the company. Reversal is sought on application for supersedeas.

Of the four assignments of error urged, we deem it necessary to consider only the third: That the court erred in "directing a verdict on behalf of the defendant at the close of the evidence in the case * * * contrary to the evidence," the others being clearly insufficient under our rule 32 *(Cunningham v. Snelling,* 91 Colo. 454, 15 P. (2d) 713). This involves the determination of whether there was any evidence in the case requiring submission of the issues to the jury.

Heinrich made application for, and received, a contract of insurance from the company for a term period from April 8, 1937, to October 8, 1937, the premium being $24.60, upon which he made two payments, one of $10 when the application was signed April 7th, which was the membership fee, and the other, for $2.30, May 1st. The following notation appears on the receipt given

Heinrich by Mr. Nelson, the company's agent, dated May 1, 1937, the time of the payment of the last item of $2.30: "Remainder of 1/2 prem." June 25, 1937, notice of cancellation was mailed to Heinrich, which read as follows:

"June 25, 1937.

"Notice of Cancellation
"Of entire Coverage.
"Carl Heinrich
"Box 154
"Windsor, Colorado.
 "Policy No. 2194506
 "The coverage noted above will be cancelled on July 4, 1937 in accordance with the terms of your policy, unless before that time the amount due $12.30, is received at the home office.
"Dear Sir:
 "We have been expecting your remittance for the above amount but up until the time of mailing this notice it has not been received.
 "Under the terms of your policy we are regretfully obliged to cancel the coverage indicated above under 'Notice of Cancellation,' unless before the effective date indicated your remittance has been received at the home office.
 "No further notice will be given and the exchange will assume no further liability on the cancelled coverage after the cancellation date.

"Yours very truly,
"Farmers Underwriters Association
"Atty. in Fact
"an
cc Colo. 21 'By John C. Tyler
 "Pres."

The provision in the policy concerning cancellation is as follows:
 "(19) Cancellation. This policy may be cancelled by the named insured by mailing written notice to

the Exchange stating when thereafter such cancellation shall be effective, in which case the Exchange shall, upon demand, refund the excess of premium paid by such insured above the customary short rate premium for the expired term. This policy may be cancelled by the Exchange by mailing written notice to the named insured at the address shown in this policy stating when not less than five days thereafter such cancellation shall be effective, and upon demand the Exchange, shall refund the excess of premium paid by such insured above the pro rata premium for the expired term. The mailing of notice as aforesaid shall be sufficient proof of notice and the insurance under this policy as aforesaid shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice either by the named insured or by the Exchange shall be equivalent to mailing. The Exchange's check or the check of its representative similarly mailed or delivered shall be a sufficient tender of any refund of premium due to the named insured. If required by statute in the state where this policy is issued, refund of premium due to the named insured shall be tendered with notice of cancellation when the policy is cancelled by the Exchange and refund of premium due to the named insured shall be made upon computation thereof when the policy is cancelled by the named insured.''

The address of Heinrich given in the policy was Box 154, Windsor, Colorado. He claims, and we may assume for the purpose of this opinion, that he never received the notice of cancellation, although the evidence is conclusive that it was mailed to him at the address recited in the policy. Heinrich's correct address was Box 154, Route 1, Windsor, Colorado. There was a box No. 154 in the post office, which might be confusing and result in the possibility of a mistake having been made in delivery, but the postmaster testified that he knew Hein-

rich was receiving his mail on Route 1 and that mail addressed to him at Box No. 154 would reach him.

The evidence is undisputed that Nelson, the solicitor, called at the Heinrich home July 2, and told Mrs. Heinrich that there was a balance due on the premium of $12.30; that she informed her husband of Nelson's visit and his demand for this balance, and that Heinrich did nothing about it.

As to the receipt of the policy, Heinrich testified as follows:

"Did Mr. Nelson deliver the policy to you? A. Yes, sir. Q. You saw on that policy the terms as to how long that policy was to run, didn't you? A. Yes, sir. Q. That was April 8th to October 8th, 1937? A. Yes, sir. Q. The policy also showed what the premium was? A. Yes. Q. Is this the policy that you examined, was that on there? A. Yes, sir. Q. Does that show $12.30 credit, balance of $12.30? A. Yes, sir."

In addition to the policy, there was delivered to Heinrich a regular invoice from the company showing a credit of $12.30, and a balance due of $12.30.

■ Having thus admitted that he saw on the policy its terms and knew how long the policy was to run, Heinrich was charged with notice of the provision in item 2 of the declarations that "The policy term is * * * for which the premium deposit is maintained." This position is fortified by the fact that a short time after the accident he remitted to the company the $12.30 and had his policy reinstated.

In view of Heinrich's admissions, there was nothing to submit to the jury on the alleged fact of his not having received the notice of cancellation sent out by the company June 25th. While the trial court assigned as the reason for his decision, the conclusiveness of the cancellation clause in the policy, we deem it unnecessary to decide that question in view of the single assignment of error considered.

■ On the matter of waiver of payment of the bal-

ance of the premium by Nelson, as agent, there was nothing to submit to the jury for two reasons, both binding on Heinrich. First, while it is true that by the terms of subsection 9 of section 19, chapter 87, volume 3, '35 C. S. A., Nelson was the agent of the company, we must consider the section in its entirety, and the latter part of subsection 9 reads as follows: "* * * but no statement or declaration made to or by an agent, examiner or other person, not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."

Second, in addition, sections 17 and 20 of the policy here provide:

"(17) Changes

"No notice to any agent, or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of this policy nor estop the Exchange from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed for Farmers Automobile Inter-Insurance Exchange, by an executive officer of its attorney-in-fact, the Farmers Underwriters Association."

"(20) Declarations

"By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and the Exchange or any of its agents relating to this insurance."

In passing on the statute, subsection 9, supra, we have said: "This provision of the law clearly exempts the company from obligations arising from any oral statements, made by Evans [the agent] when taking the application, which were not also in the application itself."

*Commonwealth Cas. Ins. Co. v. Kuhrt,* 75 Colo. 175, 179, 225 Pac. 251.

 Heinrich is charged with notice of the statute and is bound by said sections 17 and 20 of the contract. This being true, the court properly could not have done otherwise than to take the case from the jury.

The judgment is affirmed.

MR. JUSTICE YOUNG and MR. JUSTICE BURKE concur.