The **FARMERS & BANKERS LIFE INSURANCE COMPANY**, Plaintiff-Appellant,

v.

**William J. ALLINGHAM and Mrs. William J. Allingham, a/k/a Betty Ann Allingham, Defendants-Appellees.**

No. 71-1352.

United States Court of Appeals,
Tenth Circuit.

March 14, 1972.

resentations made by the insured in answering certain questions contained in the application for the issuance of the policy.

A trial of the case was had to the court, without a jury, and rescission of the policy was denied. By a very comprehensive memorandum opinion, the trial judge made elaborate findings of fact and conclusions of law.

The insured, Allingham, was a life insurance salesman of fifteen years' experience with three insurance companies, having qualified as a Charter Life Underwriter in 1962. He had begun selling insurance for Farmers and Bankers in April, 1965. The narrative of Allingham's medical history begins in 1958 when he first became a patient of one Dr. Livingston. There is no further history in the narrative of visits to Dr. Livingston until early 1966 when the visits became more and more frequent, but apparently without successful diagnosis or treatment. He experienced a weight loss during this time also, some of which was medically calculated. Allingham was hospitalized for diagnostic tests and also had a muscle biopsy performed prior to executing the insurance application. He then began complaining of emotional problems, and soon after developed numb spots on his legs and arms. Allingham, unknown to Dr. Livingston, went to another doctor, Dr. Guese, seeking to find the cause of his complaints. This doctor found nothing wrong except indications the complaints were psychosomatic. Four days after this, Allingham was given his physical examination for the Farmers and Bankers life insurance application by Dr. Livingston. Allingham died on April 11, 1969, of primary amyloidosis, a rare disease which had been diagnosed in the fall of 1968.

Appellant first assaults the trial court's characterization of the question of rescission as "whether there were fraudulent misrepresentations." Farmers and Bankers contends the element of fraud is not requisite to rescission, but rather that right exists upon a showing

Stuart S. Gunckel, Denver, Colo., for plaintiff-appellant.

John T. Maley, Denver, Colo. (Robert A. Schiff, Denver, Colo., on the brief), for defendants-appellees.

Before BREITENSTEIN, HILL and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

In this diversity suit, appellant insurance company seeks to rescind a life insurance contract because of alleged untrue and incomplete answers, and misrep-

the answers to be not full, not complete or not true. The answers which appellant contends were not accurate or complete are: (1) an indication by Allingham that he believed himself to be in good health; (2) listing of Dr. Livingston as the last physician consulted, when in fact it was Dr. Guese only four days previously; (3) failure to inform of the muscle biopsy operation; (4) a negative response as to weight fluctuation; (5) negative responses as to ailment or disease of systems and functions · of the body and mind; and (6) a negative response as to consultation of a physician for any ailment or disease not listed.

Appellant contends the frequency of Allingham's visits to various physicians and his record of complaints and ailments clearly show he did not believe he was in good health as he stated in the application. Appellees' answer is that this was a request for Allingham's opinion, and the affirmative response was justified in view of the failure of any physician to diagnose his ills as attributable to any particular disease. Appellees admit the incorrectness of the last indicated physician consulted, but explained that because of Allingham's experience as an insurance man, his indication of his personal physician who was more familiar with his medical history may have been preferable to the physician he had seen only once. Appellees also argue this erroneous answer was not material to the risk in assessing Allingham's insurability. Appellees also assert the failure to indicate the muscle biopsy as a surgical operation does not give appellant a right to cancel the policy. They assert the omission was justified on the basis that the muscle biopsy was not a surgical operation in the ordinary sense, that is, curative in nature, but rather was for diagnostic purposes. They defend the failure to disclose Allingham's weight loss on the basis that the vice president and secretary of Farmers and Bankers, Mr. Waite, knew of this, therefore appellant was estopped to assert this as a basis of cancellation. The trial court adopted this theory in rejecting Farmers and Bankers' argument concerning Allingham's failure to disclose his weight loss in the application. The negative responses to the list of ailments or diseases were defended by appellees on the basis that Allingham had never had any of the diseases listed nor had he consulted a physician with specific reference to any. He was, therefore, justified in answering negatively to the inquiries.

The thrust of Farmers and Bankers' argument is centered on the assertion that it, as the insurance writer, has the right to decide for itself, on the facts presented to it, whether it should assume the risk of insuring the applicant. It contends the failure to answer the questions fully, completely and truthfully denied it that right to assess the risk. It asserts the declaration signed by Allingham which declared *inter alia,* that the answers were full, complete and true is contractually binding and upon proof otherwise, gives it a right to rescind and cancel the policy.

Under Colorado law, an insurance company is allowed to avoid a policy when it is determined the policy is based on "[a] false statement or declaration of fact material to the risk . . . ."[1] Germania Life Ins. Co. v. Klein, 25 Colo.App. 326, 137 P. 73, 75 (1913). Farmers and Bankers has assumed the position of its entitlement to judgment upon a showing the questions could have been answered other than they were. We believe that to be an understatement of its burden. Additionally, it must be shown the contested statements were "material to the risk." The cases cited by appellant, while supportive of its argued right of cancellation upon a showing of a failure to give complete and full answers, are distinguishable on the facts showing a much more aggravated knowledge of the physical ailment by the applicant. In all of the

1. *See also* Fallis v. Zurich Insurance Co., 28 Colo.App. 235, 472 P.2d 174 (1970); Benson v. Bankers Life and Casualty Co., 147 Colo. 175, 362 P.2d 1039 (1961).

cases cited, the applicant either specifically knew of the disease or was under such intense affliction as to require almost constant attention so that the failure to disclose could be classified only as done by deliberate design.[2] That is not the case here. While it is true that Allingham had undergone recent medical tests and examinations, the trial court concluded that he was justified in making the answers as he did in light of the failure of any doctor to diagnose a disease or particular ailment. Implicit in that determination is the conclusion that the ailments had not risen to such magnitude that Allingham's failure to disclose was a deliberate concealment of matters within his particular knowledge. Trial court findings will not be disturbed on appeal unless clearly erroneous. This recognized appellate rule prevents us in this case from disturbing the findings of the trial court, because from a reading of the record we cannot say that any of the findings are unsupported by the evidence and therefore clearly erroneous.

The response indicating Dr. Livingston as the last physician consulted rather than Dr. Guese has been admitted by appellees to be false. However, proof of falsity does not give rise to the right of cancellation. Additionally, it must be shown the misrepresentation was material to the risk. The testimony of Dr. Guese indicates he felt nothing was seriously wrong with Allingham until long after the policy was issued. An indication of Dr. Guese as the last physician consulted would have afforded appellant the opportunity to discuss Allingham's condition with Dr. Guese. We fail to see, however, that communication with Dr. Guese would have materially affected appellant's consideration as to accepting the risk.

We further conclude the failure to list the muscle biopsy as a surgical operation was not a misrepresentation in view of the testimony that this was solely for diagnostic purposes.[3]

We further conclude the trial court correctly applied the principle of waiver and estoppel in regard to the question of Allingham's weight loss. The testimony of Mr. Waite, the vice president and secretary of Farmers and Bankers, clearly shows his knowledge of Allingham's weight loss. As vice president and secretary of the appellant, his knowledge is imputed to the insurance company.[4]

The one remaining argument raised by appellant is its contention that Allingham, because of his position as an agent of Farmers and Bankers, was held to a higher fiduciary duty to fully disclose his physical condition.[5] We agree with this position but fail to view this as requiring the agent-applicant to speculate as to his physical maladies for the purpose of disclosing a disease which the examining physicians had been unable to diagnose at the time of the application.

The rule applicable in this case is well stated by this Circuit in American Eagle Fire Insurance Company of New York v. Peoples Compress Co., 156 F.2d 663 (10th Cir. 1946). At 667 this Court said: "It is the general rule that an insured conceals a material fact when he designedly and intentionally withholds a

---

2. *See* Capitol Life Insurance Co. v. Thurnau, 130 Colo. 345, 275 P.2d 940 (1954) ; North American Life Ins. Co. of Chicago v. Korrey, 113 Colo. 359, 157 P.2d 149 (1945).

3. "By definition a surgical operation is a procedure carried out on a living body for effecting a cure by altering an existing abnormal state or condition, as distinguished from medical. A biopsy is defined as the removal of tissue, cells, or fluids from the living body for examination or study for diagnostic purposes." Massachusetts Mutual Life Insurance Company v. Allen, 416 P.2d 935, 941 (Okl.1965).

4. *See* Pomeroy v. Rocky Mountain Insurance and Savings Institution, 9 Colo. 295, 12 P. 153 (1886).

5. *See* Schrader v. Prudential Insurance Company of America, 280 F.2d 355 (5th Cir. 1960).

fact material to the risk, which honesty, good faith, and fair dealings require him to communicate to his insurer."

For the reasons heretofore set out and by the application of this rule, we are compelled not to disturb the findings and conclusions of the trial court.

Affirmed.